OPINION
{¶ 1} Defendant, Riccardo L. Kellum ("defendant"), appeals from the judgment of the Franklin County Court of Common Pleas imposing maximum and consecutive sentences for aggravated assault and voluntary manslaughter. For the following reasons, we affirm.
 {¶ 2} On July 12, 2002, defendant shot and killed Michael Allen and wounded James Prince. Around 5:00 in the afternoon, a Cadillac pulled up in front of a row of townhouses located on Oakwood Avenue. Mary Brown, who lived at 529 Oakwood, was outside in front of her townhouse talking to a friend who was parked in a van on the street and witnessed the incident in question. Ms. Brown's townhouse was only two doors down from 525 Oakwood. Ms. Brown overheard an argument ensue between Mr. Allen, Mr. Prince, and defendant. Mr. Allen started beating up defendant. The fight lasted approximately five minutes. Defendant got away and started to run down the street with Mr. Allen and Mr. Prince chasing after him. Eventually, the fight resumed. Defendant got away again and Ms. Brown saw defendant go around the side of a building but she did not know where he went until defendant reappeared shortly thereafter.
 {¶ 3} Mr. Allen and Mr. Prince were attempting to get back into the Cadillac when defendant came to the door of 525 Oakwood carrying a gun and began randomly shooting outside toward the two men. Ms. Brown testified at trial that defendant held the gun over the heads of two children. The Cadillac was pinned against the curb and could not be moved quick enough to drive away, so Mr. Allen and Mr. Prince started running away on foot. Defendant ran after them and continued to shoot. Ms. Brown testified she heard six or seven shots, one right after the other. Another witness, Reverend Terry Townes, testified that he heard approximately five gunshots while he was inside Macedonia Baptist Church. When Reverend Townes arrived outside to see what was happening, he saw Mr. Prince trying to pick up Mr. Allen and put him in the Cadillac, which was parked in the middle of the street. Reverend Townes noticed Mr. Prince bleeding profusely. Reverend Townes asked Mr. Prince what was wrong and Mr. Prince responded that his partner, Mr. Allen, was shot. Thereafter, Mr. Prince laid Mr. Allen on the ground and drove off.
 {¶ 4} Another witness, Omar Ayala was outside when Reverend Townes arrived. Mr. Ayala lived directly behind the Church. Mr. Ayala was outside writing a check to a sub-contractor when he suddenly heard something that sounded like fireworks. When Mr. Ayala turned to see what was happening, he saw Mr. Allen running from the townhouses. Mr. Ayala soon realized the noises were gunshots when he heard the bullets fly by him and strike a tree or other object. Mr. Ayala testified to the best of his recollection there were approximately seven shots. He heard one shot, then three more, then a pause, then three more. Mr. Ayala called 911 as soon as he realized shots were being fired. Mr. Ayala then witnessed the Cadillac coming toward Mr. Allen, who had fallen to the ground, and told Mr. Prince to leave Mr. Allen where he was because the police were coming. Mr. Ayala further testified that it was a bright sunny day with a lot of people about and children playing outside. When the police arrived, Mr. Allen was unconscious and had no pulse. Mr. Allen died from a gunshot wound that perforated his lung and heart. Mr. Prince survived with a gunshot wound to his upper lip that was subsequently removed at the hospital.
 {¶ 5} Defendant was charged with one count of aggravated murder with a gun specification and one count of attempted aggravated murder with a gun specification. Defendant pled not guilty. The jury found defendant guilty of the lesser included offenses of voluntary manslaughter and aggravated assault, each with a gun specification. The trial court sentenced defendant to the maximum of ten years for voluntary manslaughter, the maximum of 18 months for aggravated assault, and a mandatory three years for the gun specification. The trial court further ordered the sentences to be served consecutively. Defendant filed the instant appeal. Defendant ("appellant") asserts the following assignments of error:
1. The trial court erred in imposing maximum sentences upon appellant without complying with the statutory requirements of R.C. Chapter 2929 et seq.
2. The trial court erred in imposing consecutive sentences upon appellant without complying with the statutory requirements of R.C. Chapter 2929 et seq.
 {¶ 6} A trial court has discretion when sentencing within the statutory guidelines. State v. Haines (Oct. 29, 1998), Franklin App. No. 98AP-195. A reviewing court may modify or vacate a sentence and remand for re-sentencing only if it finds by clear and convincing evidence that the record does not support the sentence. State v. Martin (1999), 136 Ohio App.3d 355. Clear and convincing evidence is that measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. State v.Eppinger (2001), 91 Ohio St.3d 158, 164.
 {¶ 7} "When imposing a felony sentence, the trial court must consider the overriding purposes of felony sentencing, which are to protect the public from future crime and to punish the offender." State v. Comer, 99 Ohio St.3d 463, at ¶ 11,2003-Ohio-4165; R.C. 2929.11(A). To achieve such purposes, the court shall consider "the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both." Id. A felony sentence shall be reasonably calculated to achieve the two overriding purposes of sentencing "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders." R.C. 2929.11(B). Factors to consider in sentencing are set forth in R.C. 2929.12(B) through (E).[1]
 {¶ 8} In appellant's first assignment of error, he maintains the trial court failed to make the required findings for imposition of maximum sentences. R.C. 2929.14(C) allows a court to impose the maximum prison term for an offense upon offenders who: (a) committed the worst forms of the offense; (b) offenders who pose the greatest likelihood of committing future crimes; (c) major drug offenders; and (d) repeat violent offenders. The trial court need only find that defendant falls into one of the above four categories. State v. Clark, Franklin App. No. 02AP-1312, 2003-Ohio-4136; State v. South, Portage App. No. 2002-P-0137, 2004-Ohio-3336; State v. Brewer, Clark App. No. 02CA0057, 2004-Ohio-3397; State v. Fair, Cuyahoga App. No. 82278, 2004-Ohio-2971. If the court imposes the maximum prison term, the court must make a finding stating its reasons for selecting the sentence imposed and its reasons for imposing the maximum term. R.C. 2929.19(B)(2)(d); State v. Edmonson (1999),86 Ohio St.3d 324, 328.
 {¶ 9} While the trial court is not required "`to utter any magic or talismanic words, * * * it must be clear from the record that the court made the required findings.'" Clark, supra, at ¶ 15, quoting State v. White (1999), 135 Ohio App.3d 481, 486. To determine whether the trial court made the required statutory findings and explanations, we review the transcript of the sentencing hearing. Comer, supra.
 {¶ 10} After going through appellant's extensive juvenile criminal history and his previous adult prison term, the trial court stated:
We're in a situation where we have a person who was shot in the back, and there's some significance to that as far as I'm concerned. He was shot in the back and died of those wounds. This was not just a single shot, or two shots. All of the witnesses agreed that there was a minimum of six shots, and upwards of eight shots were fired according to the bullet count from different witnesses. And I still recall the one witness mentioned that he was standing outside his garage and bullets were whizzing by him, and this was some distance from where the person that Mr. Kellum appeared to be trying to shoot was standing, which is an indication to me of just random, willful, thoughtless, wanton violence on Mr. Kellum's part.
We know that there were children in this neighborhood. We know there were other bystanders out on the street. The fact that only one person died is something of a miracle in and of itself.
* * *
The Court would further note that the Defendant has been previously sent to prison. I think that probably we would all agree that causing the death of another person is the most serious or worst form of commission of offense of physical violence.
The Court further determines from Mr. Kellum's past record that he has a great likelihood to reoffend in the future.
(Tr. 759 — 760.)
 {¶ 11} Appellant takes issue with the trial court's statement that "causing the death of another person is the most serious or worst form of commission of offense" arguing it is insufficient under R.C. 2929.14(C). Even if the trial court did not specifically find that appellant committed the worst form of the offense, the trial court did specifically find that appellant poses the greatest likelihood to commit future crimes. We find this sufficient to satisfy R.C. 2929.14(C). As previously stated, the trial court need only find a defendant meets one of the four categories listed in section (C). Clark, supra.
 {¶ 12} The trial court also stated its reasons for this finding. R.C. 2929.19(B)(2)(d). Appellant fired multiple gunshots from the door of a townhouse into the street. Appellant continued to fire shots out in the street. Testimony established there were bystanders and children in the neighborhood. The trial court characterized appellant's acts as random, willful, thoughtless, and wanton violence. The trial court also detailed appellant's extensive previous criminal history, evidencing violent temper problems and aggression. These facts support the trial court's findings and the trial court adequately stated its reasons for imposing maximum sentences. Because the trial court complied with the applicable sentencing statutes, we cannot clearly and convincingly find that appellant's maximum sentence was contrary to law or unsupported by the record. Accordingly, appellant's first assignment of error is overruled.
 {¶ 13} In the second assignment of error, appellant contends the trial court erred in imposing consecutive sentences. We disagree. R.C. 2929.14(E)(4) states:
If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18
of the Revised Code, or was under post-release control for a prior offense.
(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.
 {¶ 14} R.C. 2929.19(B)(2)(c) establishes the procedure the trial court must follow when imposing consecutive sentences. As with maximum sentences, the trial court must make a finding that sets forth the reasons for imposing consecutive sentences. Statev. Hurst (Nov. 8, 2001), Franklin App. No. 01AP-77.
 {¶ 15} In Comer, supra, the Supreme Court of Ohio held that when imposing consecutive sentences, the trial court (1) must find that consecutive sentences are necessary to protect the public from future crime or to punish the offender; (2) must find that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses; and (3) must find the existence of one of the enumerated circumstances in R.C. 2929.14(E)(4)(a) through (c). Id. at ¶ 13. The trial court must also state its reasons for selecting the sentence imposed. Id. at ¶ 14. In this case, the trial court made these express findings and adequately stated its reasons.
 {¶ 16} The court specifically found that consecutive sentences were necessary to protect the public and to effectively punish the offender, that consecutive sentences are not disproportionate to the seriousness of the offense and danger to the public, that no single prison term for any of the offenses adequately reflects the seriousness of the offenses, and that defendant was on judicial release at the time of the offense, the effective equivalent of post-release control. The court gave its reasons by stating consecutive sentences were necessary to protect the public from future crimes and discussed appellant's extensive juvenile record as well as his adult prison term for felonious assault. As stated above, appellant fired multiple gunshots randomly during daylight hours when people were outside. The trial court stated it was a miracle that only one person died during the incident. Therefore, the trial court complied with R.C. 2929.14 and R.C. 2929.19. Clear and convincing evidence exists to support the trial court's findings and reasons for imposing consecutive sentences. Accordingly, appellant's second assignment of error is overruled.
 {¶ 17} Based on the above, the trial court adequately stated its reasons for imposing the maximum sentences for voluntary manslaughter and aggravated assault. Further, the trial court made the necessary findings to impose consecutive sentences and adequately stated its reasons. It is clear from the record the trial court imposed the maximum terms based on its belief that appellant has the greatest likelihood of committing future crimes, particularly future violent crimes.
 {¶ 18} Accordingly, appellant's first and second assignments of error are overruled and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
Bowman and Sadler, JJ., concur.
[1] {¶ a} R.C. 2929.12(B) provides "[t]he sentencing court shall consider all of the following that apply regarding the offender, the offense, or the victim, and any other relevant factors, as indicating that the offender's conduct is more serious than conduct normally constituting the offense: (1) The physical or mental injury suffered by the victim of the offense due to the conduct of the offender was exacerbated because of the physical or mental condition or age of the victim. (2) The victim of the offense suffered serious physical, psychological, or economic harm as a result of the offense. * * * (6) The offender's relationship with the victim facilitated the offense. (7) The offender committed the offense for hire or as a part of an organized criminal activity."
{¶ b} Section (C) lists factors to consider as indicating the offender's conduct is less serious than conduct normally constituting the offense including "(1) The victim induced or facilitated the offense. (2) In committing the offense, the offender acted under strong provocation."
{¶ c} Section D sets forth factors indicating the offender is likely to commit future crimes including "(2) The offender previously was adjudicated a delinquent child * * * or the offender has a history of criminal convictions. (3) The offender has not been rehabilitated to a satisfactory degree after previously being adjudicated a delinquent child * * * or the offender has not responded favorably to sanctions previously imposed for criminal convictions. (4) The offender has demonstrated a pattern of drug or alcohol abuse that is related to the offense, and the offender refuses to acknowledge that the offender has demonstrated that pattern, or the offender refuses treatment for the drug or alcohol abuse. (5) The offender shows no genuine remorse for the offense." Section (E) sets forth factors indicating the offender is not likely to commit future crimes.